**SIRKIN AND LEVINE Employer–Appellant,**

v.

**Cathy TIMMONS, Employee–Appellee,**

v.

**LOSS AND MILLER, Co–Employer.**

C.A. No. 93A–11–001.

Superior Court of Delaware, New Castle County.

Submitted: April 18, 1994.
Decided: July 25, 1994.

Michael P. Freebery, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for employer-appellant.

Harvey B. Rubenstein, Wilmington, for employee-appellee.

Cassandra F. Kaminski, of Young, Conaway, Stargatt & Taylor, Wilmington, for co-employer.

## MEMORANDUM OPINION

BABIARZ, Judge.

This is the Court's decision regarding Sirkin & Levine's, Employer–Appellant, appeal from a decision of the Industrial Accident Board (Board) in which the Board awarded workers compensation benefits to Cathy Timmons, Employee–Appellee. In its decision, the Board found that Timmons contracted Hepatitis–B, an occupational disease, as a result of her employment as a part-time dental hygienist for two separate dental facilities, Sirkin & Levine and Loss & Miller. As a result of this part-time concurrent employment, the Board apportioned payment between the two Employers in proportion to their wage liability to Timmons, 51% to Sirkin & Levine and 49% to Loss & Miller.

Sirkin & Levine challenges the Board's findings on two grounds.[1] First, Sirkin & Levine assert that the Board erred as a matter of law in finding that both Employers are accountable for Timmons' medical condition. Second, Sirkin & Levine asserts that the Board erred as a matter of law in accepting Timmons' lay opinion regarding the cause of her illness. Sirkin & Levine asks the Court to reverse the Board's decision and remand the matter back to the Board for an appropriate finding on the issue of causation.

For the reasons discussed herein, the Court finds that the Board did not commit legal error with respect to the issues of causation and the admissibility of Timmons' testimony relating to her understanding of how she contracted Hepatitis–B. Therefore, the decision of the Board is affirmed.

### I. Factual Background

Timmons, a trained dental hygienist, began working part-time for both Sirkin & Levine and Loss & Miller in September 1991. Prior to this time, Timmons worked for another dentist, Dr. Stan Glauskopf. She ceased working for Dr. Glauskopf in May 1991 and did not return to work until September 1991. Timmons worked for both Sirkin & Levine and Loss & Miller until she was diagnosed with Hepatitis–B in February 1992.

During her period of employment with Sirkin & Levine and Loss & Miller, Timmons worked for each dental facility, on average, one day each week. When examining patients, Timmons routinely wore protective gloves at both facilities and a mask at Loss & Miller. In addition, Timmons reviewed each patient's medical history prior to the examination. These records revealed that none of Timmons' patients at Sirkin & Levine were known carriers of the hepatitis virus, while four patients at Loss & Miller were known carriers of the virus. Despite these precau-

1. Loss & Miller join Timmons in opposing Sirkin & Levine's appeal of the Board's decision.

tionary measures, Timmons contracted Hepatitis–B and was diagnosed with the virus in February 1992.

Timmons subsequently filed a Petition for Compensation Due seeking temporary total disability benefits for the period of time between February 17, 1992 and March 16, 1992 plus medical bills associated with the treatment of the virus. Neither employer contested Hepatitis–B's status as an occupational disease for health care workers, the period of temporary total disability or the relationship of the medical treatment received by Timmons to the occupational disease. However, both employers asserted that Timmons could not meet her burden of proof to establish at which of the two offices she contracted the virus.

Faced with the sole issue of causation, the Board heard from four medical experts. Dr. Ira F. Lobis, the first medical expert to testify for the Claimant, testified that the risk of infection with Hepatitis–B in health care workers is substantially higher than in the general population. Hepatitis–B is contracted from a point source, one particular patient. In order for Hepatitis–B to be transmitted there must be a passage of blood from one person to another. The blood can be carried in micro-organisms which are not visible to the naked eye. Dr. Lobis testified further that most carriers of the Hepatitis virus are asymptomatic. Therefore, without a blood test, a carrier is usually not aware that he or she is infected with the virus. This is significant because based on this fact, Dr. Lobis testified that even though four patients at Loss & Miller recorded their history of Hepatitis and none of the patients at Sirkin & Levine recorded a history of Hepatitis, it was impossible to determine where the Claimant contracted the disease.

Finally, Dr. Lobis testified that he examined the Claimant on September 30, 1992. Dr. Lobis' notes of this examination indicate that Claimant did not present any of the following risk factors relating to the transmission of Hepatitis–B: she had no history of intravenous drug use, no extramarital affairs, and no family history of liver disease. In addition, Timmons had tested negative for Hepatitis in January 1990 and January 1991.

As a result, Dr. Lobis concluded that "in all probability [claimant's] exposure [to hepatitis] was occupational related." (R–24). However, it is impossible to determine from which patient the disease was contracted. (R–39).

Dr. Robert Arm, the second medical expert to testify for the Claimant, did not personally examine the Claimant. However, after reviewing Dr. Lobis' notes, Dr. Arm concluded that Claimant contracted the Hepatitis virus at either Sirkin & Levine or Loss & Miller. However, Dr. Arm testified that while Hepatitis is transmitted from a single patient, "which office, which patient, is almost impossible to pick out." (R–57).

David Wolfe was the last medical expert to testify for the Claimant. Mr. Wolfe is a Resident Nurse with a Masters in Public Health, and works as an epidemiologist at the Bureau of Disease Prevention for the State of Delaware. Mr. Wolfe testified that Hepatitis–B is a serious occupational hazard for all health care professionals, including dental workers. While Mr. Wolfe never examined the Claimant, he testified that upon a review of her records, it is a reasonable probability that she contracted the virus while at work for either of the two employers. Mr. Wolfe stated that it is impossible to pinpoint from which patient the Claimant contracted the virus. Mr. Wolfe also testified that the incubation period for Hepatitis–B is approximately 45 to 180 days, thereby eliminating any possibility that Claimant was exposed to the virus during her previous employment with Dr. Glauskopf.

Finally, Dr. William A. Taylor testified by deposition for both Employers. Dr. Taylor agreed with the Claimant's medical experts that Claimant had suffered from acute Hepatitis–B in February 1992. However, Dr. Taylor was unable to make any findings relating to causation. More specifically, Dr. Taylor found that because Claimant wore gloves and a mask and reported no incidents of needle sticks, it was very unlikely that she contracted the virus from one of her patients. Dr. Taylor did concede, however, that the fact that four patients at Loss & Miller reported a history of Hepatitis while none of the patients at Sirkin & Levine reported a

history of Hepatitis "means nothing." (R–136).

The Board also heard testimony from the claimant herself and Sally Levine, the office manager at Sirkin & Levine. Claimant testified that as a result of her training as a dental hygienist, she was aware of the increased risk of contracting Hepatitis–B. Therefore, she took precautionary measures to limit her exposure to the virus. In addition, Claimant explained the nature of her job and that she did not recall any cuts or needle pricks or any exposure to blood during her course of employment with either Sirkin & Levine or Loss & Miller. Sally Levine testified that Claimant did go through the patient records to determine whether any of Claimant's patients had recorded a history of Hepatitis.

Based on the above testimony, the Board found that Claimant met her burden of establishing that she contracted a compensable occupational disease in the course of her employment with Sirkin & Levine and Loss & Miller. The Board could not, however, determine the source of the virus. As a result, the Board apportioned payment between the two Employers in proportion to their wage liability to Claimant, citing 19 Del.C. § 2354 as authority.

## II. *Standard of Review*

On appeal from the Board, the role of the Court is to determine whether or not there is substantial evidence in the record to support the Board's factual findings and to correct errors of law. *Johnson v. Chrysler Co.*, Del.Supr., 213 A.2d 64 (1965). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Olney v. Cooch*, Del.Supr., 425 A.2d 610, 614 (1981). The Courts review of alleged errors of law by the Board is plenary. *Brooks v. Johnson*, Del. Supr., 560 A.2d 1001 (1988).

## III. *Discussion*

### A. *Causation.*

*Sirkin* & Levine challenges the Board's conclusion that both Employers are responsible for the Claimant's disease, because all of the expert medical testimony presented to the Board indicated that the virus came from a single source or patient. In conjunction with this argument, Sirkin & Levine asserts that the Board committed legal error in relying upon 19 *Del.C.* § 2354 as the basis for apportioning the liability between the two Employers.

19 *Del.C.* § 2354 provides that when an employee is injured in the course of his or her joint service for two or more employers, the employers must pay compensation in proportion to their wage liability. This statute expressly requires a finding of joint as opposed to concurrent employment. *Mazzetti & Sons v. Ruffin*, Del.Supr., 437 A.2d 1120 (1981). Sirkin asserts that "[t]he Board committed legal error in not viewing this case as a concurrent employment situation." (Op.Br. at 11.)

The Court finds that the Board did view this case as a concurrent employment situation. In its summary of the procedural history of the case, the Board expressly stated that "Claimant worked part-time *concurrently* for each of the two Employers at the time she contracted the Hepatitis B virus." (Bd. Op. at 1 (emphasis added).) Nowhere in the Board's Opinion did it find that Claimant was jointly employed by the two dental offices. Instead, the Board found that Timmons contracted Hepatitis–B, an occupational disease, during the course of her employment with both Sirkin & Levine and Loss & Miller. Because it is impossible to discern the point source of Timmons' virus, the Board apportioned the liability between the two employers in proportion to their wage liability to Timmons. In making this apportionment, the Board was guided by 19 *Del.C.* § 2354.

Notwithstanding this finding, Sirkin asserts that in a concurrent employment situation, the Board is required to make a specific finding of causation as between the two dental offices. This issue is one of first impression in Delaware. In fact, the Court has been unable to uncover any precedent addressing the specific issue of apportionment of workers' compensation benefits for occupational diseases contracted as a result of a concurrent employment situation.

It has been recognized that the question of multiple employer liability for a work-related disability is particularly difficult when the disability involved is an occupational disease rather than an injury, and the type of work done by the claimant is the same for all employers. 1B Larson, *Worker's Compensation Law*, § 48.50 n. 10.1 (1993). In *Colwell v. Trotman*, 47 Or.App. 855, 615 P.2d 1094 (1980), the court held that both concurrent employers of a dental hygienist suffering from an occupational disease were responsible for paying the dental hygienist's workers' compensation benefits. After making this determination, the *Colwell* court remanded the case to the Workers' Compensation Board for apportionment. *Id.* 615 P.2d at 1097.

■ A similar dilemma regarding the payment of workers' compensation benefits arises when an employee is engaged in a dual employment situation. Dual employment occurs when:

[a] single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately, and when the service for each employer is largely unrelated to that for the other. In such a case, the employers may be liable for worker's compensation separately or jointly, depending on the severability of the employee's activity at the time of injury.

1B Larson, *Worker's Compensation Law*, § 48.41 (1993). In *Clemmer v. Carpenter*, 98 N.M. 302, 308–09, 648 P.2d 341, 347–48 (1982), *reh'g denied*, May 24, 1982, *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982), the court found that:

In dual-employment situations, if the accident occurs when the work[er] is clearly performing services for only one employer, then that employer is liable for any worker's compensation benefits. If, however, the services being performed at the time of the accident cannot be attributed to a specific employer, but are services performed for both employers, then both employers are liable.

*See also Basin Land Irrigation Co. v. Hat Butte Canal*, 114 Idaho 121, 754 P.2d 434 (1988) (in dual employment situation both employers are liable for worker's compensation unless worker is clearly performing services for only one employer when accident occurs); *Oilfield Safety & Machine Specialties, Inc. v. Harman Unlimited, Inc.*, 5th Cir., 625 F.2d 1248 (1980) (dual employers jointly and severally liable for compensable injuries incurred by employees).

■ Relying on the caselaw cited above, the Court finds that when an employee contracts an occupational disease while doing similar work for two concurrent employers, one employer can be held liable for the employee's workers' compensation benefits only if it can be shown that the occupational disease was contracted as a result of the employee's work for that one specific employer. However, if it cannot be determined whether the employee contracted the occupational disease from a specific employer, then both concurrent employers are liable. Any other result would violate the public policy of compensating employees for injuries sustained while working in the course of his or her employment. Apportionment of liability between two concurrent employers is a factual determination appropriately made by the Board. *See Colwell v. Trotman*, 47 Or.App. 855, 615 P.2d 1094 (1980); 1B Larson, *Worker's Compensation Law*, § 48.50 (1993).

■ In the instant action, it is undisputed that Timmons' work as a dental hygienist for both Sirkin & Levine and Loss & Miller put her in a situation of increased risk of contracting Hepatitis. All four of the medical experts who testified before the Board stated that it was impossible to determine which patient infected Timmons with Hepatitis. Therefore, the Board did not commit legal error in finding both Employers liable to Timmons for workers compensation benefits. Furthermore, the Court finds that the Board did not commit legal error when it apportioned the Employers' liability based on their wage liability to Timmons.

B. *Testimony of Claimant.*

Sirkin & Levine's second argument relates to the Board's acceptance of Claimant's testimony regarding where she contracted the

Hepatitis virus. In its findings, the Board based its decision upon the testimony of Dr. Lobis, Dr. Arm, Mr. Wolf, and "the claimant, herself." Sirkin & Levine assert that such reliance on lay testimony regarding a complicated medical issue is improper.

Claimant's testimony before the Board included a statement regarding her knowledge of the substantial risk assumed by a dental hygienist of contracting Hepatitis-B and the preventive measures which should be taken to reduce this risk. Prior to this testimony, Claimant stated that she had studied predental hygiene for three years at the University of Maryland, College Park Campus, and studied for two more years at the University of Maryland, Baltimore College of Dental Surgery. During this time, she received instruction regarding the health risks that exist in the dental field, including those risks associated with contracting the Hepatitis virus. Upon an objection by counsel for Sirkin & Levine, the Board explained that it wanted to hear such testimony from Claimant "to know the knowledge that she was taking to her working environment." (A–88).

■ It is well-established that administrative agencies operate less formally than courts. *Standard Distributing Co. v. Nally*, Del.Supr., 630 A.2d 640, 647 (1993). The rules of evidence do not apply strictly to adjudication by administrative agencies. *Id.* In fact, all evidence which could conceivably throw light on the controversy should be heard by an Administrative Board. *Ridings v. Unemployment Ins. Appeal Bd.*, Del.Super., 407 A.2d 238, 240 (1979).

■ While Claimant was not qualified as an expert, she was offered as more than a fact witness. (R–88). The Court finds that, given Claimant's background, Claimant's testimony regarding her knowledge of the occupational risks associated with her work as a dental hygienist was relevant and the Board did not commit legal error in allowing it. Insofar as the Board relied on Claimant's testimony in making its findings, the Court also finds that the Board did not commit legal error.

For the foregoing reasons, the decision of the Board is affirmed.