**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY**

| | |
|---|---|
| **TREY CANTWELL,** | ) |
| | ) |
| **Claimant Below-** | ) |
| **Appellant,** | ) |
| | ) |
| v. | ) |
| | ) **C.A. No. S15A-04-001 MJB** |
| | ) |
| **BUNTING & MURRAY** | ) |
| **CONSTRUCTION,** | ) |
| | ) |
| **Employer Below-** | ) |
| **Appellee.** | ) |

**Submitted:** September 18, 2015
**Decided:** December 17, 2015

*Upon Appellants' Appeal from the Industrial Accident Board's Decision,* **AFFIRMED.**

**OPINION**

Kyle F. Dunkle, Esq., Schmittinger & Rodriguez, 414 South State Street, P.O. Box 497, Dover, Delaware 19903, *Attorney for the Appellant*.

Anthony M. Frabizzio, Esq., and Gregory P. Skolnik, Esq., Heckler & Frabizzio, 800 Delaware Avenue, Suite 200, P.O. Box 128, Wilmington, Delaware 19899, *Attorneys for Appellee*.

**BRADY, J.**

## I. INTRODUCTION

This is an appeal from a decision of the Industrial Accident Board ("Board") dated March 16, 2015.[1] On October 14, 2014, Trey Cantwell ("Appellant") filed a Petition to Determine Compensation Due against Bunting & Murray Construction ("Appellee").[2] Appellant alleged work-related injuries arising out of a March 5, 2014 automobile accident.[3] A hearing on the merits took place before the Board on March 4, 2015.[4] By stipulation of the parties, the sole issue before the Board was whether the automobile accident fell within the course and scope of Appellant's employment with Appellee.[5]

On March 17, 2015, the Board denied Appellant's petition, holding that Appellant's accident was not within the course and scope of his employment.[6] On April 14, 2015, Appellant filed a timely appeal of the Board's decision.[7] On July 8, 2015, Appellant filed his Opening Brief,[8] and on August 19, 2015, Appellee filed an Answering Brief.[9] On September 17, 2015, Appellant filed a Reply Brief to Appellee's Answering Brief.[10]

For the reasons outlined below, the Board's decision is **AFFIRMED**.

## II. FACTS[11]

Appellee is a construction company that does site work for building pads and getting roads ready to be paved. Appellee's office is located in Selbyville, Delaware. Appellant testified that he worked for Appellee for eight years as an equipment operator and laborer. He

---

[1] *See* Notice of Appeal-Industrial Accident Board, Item 1 (April 14, 2015).
[2] *Cantwell v. Bunting & Murray Construction Corp.*, IAB Hearing No. 1419026, at *1 (March 17, 2014).
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *See id.*
[7] *See* Notice of Appeal-Industrial Accident Board, Item 1 (April 14, 2015).
[8] Opening Brief, Item 7 (July 8, 2015).
[9] Answering Brief, Item 10 (Aug. 19, 2015).
[10] Reply Brief, Item 17 (Sept. 17, 2015).
[11] Unless otherwise noted, the following facts are taken from the Board's Opinion. *See Cantwell*, IAB Hearing No. 1419026.

2

testified that he occasionally moved between jobsites for Appellee, but he usually worked on one jobsite at a time and stayed there the entire day. Appellant had been working at the Bishop's Landing jobsite in Millville, Delaware for approximately sixteen months prior to the accident in question. On March 5, 2014, at approximately 6:25 a.m., Appellant was injured in a car accident on his way to the Bishop's Landing jobsite. Appellant also testified that he did not receive compensation from Appellee for his trip into work, that he did not have a gas card, and he was never paid for mileage to go to or from work.

Jason Taylor ("Taylor") is a coworker of Appellant and a fifteen year employee of Appellee. For about three or four months prior to the accident, Taylor drove Appellant to the Bishop's Landing jobsite. Appellant testified that Taylor offered to drive Appellant to work because he drove by Appellant's house on his way to work. Appellant did not pay Taylor for driving him to work. Sometimes they stopped for gas or coffee on their way into work and on the morning of the accident, they had stopped for coffee. Appellee knew that Taylor was driving Appellant to work but did not arrange it or compensate Taylor for driving Appellant. Taylor was given a company gas card, however Appellee did not give Appellant a gas card, pay for his mileage for his commute, or pay for his commute time.

On the morning of March 5, 2014, there was a mix of snow and rain and Taylor's jeep went out of control and into a ditch, flipping multiple times. The jeep was Taylor's personal car, and not a company car. As a result of the accident, Appellant was injured and has been disabled ever since.

At the Board's hearing, Taylor testified on behalf of Appellee. Taylor testified that he works all day at the Bishop's Landing jobsite starting at 7:00 a.m. and the foreman notes when he arrives, but he does not formally clock in. Taylor further testified that prior to the accident,

3

approximately four years ago, the foreman asked Taylor if he wanted a raise or a gas card and Taylor chose the gas card because gas was expensive at that time. Appellee pays the gas card bill and Taylor turns in his gas receipts, but no mileage is documented. Taylor testified that he only uses the gas card for his commute, that he only drives his jeep to work, and that he uses a different vehicle when he is not working. Taylor testified that if he is sick and unable to work he calls Appellee's office in Selbyville, Delaware, and that employees do not report anywhere prior to going to the jobsite. Taylor testified that he started driving Appellant to work about three or four months prior to the accident because Appellant's brother was driving him but had gotten a new job and was unable to continue to do so. Taylor further testified that he was not on a special errand for Appellee at the time of the accident.

At the Board's hearing, the Bishop's Landing foreman, Brian Hitchens ("Hitchens") testified on behalf of Appellee.Hitchens has been the foreman at the Bishop's Landing jobsite for approximately two years.Hitchens testified that Appellant was paid on an hourly rate beginning when he arrived at the jobsite at 7:00 a.m. Hitchens as the foreman, keeps track of the time cards of every employee who works at the Bishop's Landing jobsite.Hitchens testified that Appellant and other employees could be assigned to another jobsite temporarily and that he finds out about a temporary assignment by a call from Appellee's office in Selbyville, Delaware.Hitchens testified that the Bishop's Landing jobsite is a long-term jobsite and Appellee's employees have been working there daily for a long time. Hitchens further testified that Taylor and Appellant were not on a special errand for Appellee at the time of the accident. Hitchens has a company vehicle and a gas card. Hitchens testified that he drives the company vehicle for personal use and Appellee pays for the gas.

At the Board's hearing, Jay Murray ("Murray") testified on behalf of Appellee. Specifically, Murray testified that Bishop's Landing will be a five to six year project and that Appellant worked there regularly.Murray testified that Appellant's workday, like any other employee, began when he arrived at the jobsite.Murray further testified that it would be unusual for an employee to be moved to a different jobsite, but it happens if the weather is bad on one jobsite and not on another. Murray stated that once a work crew is assigned to a jobsite, Appellee leaves the crew to work there together for the long-term.

Murray testified with regard to the company gas cards. Specifically, Murray testified that several years ago gas cards were given to good, long-term employees in lieu of a raise. Murray further testified that Appellee monitors the amounts charged on the gas cards to make sure the charges are not excessive, but there is no specific amount of mileage expected, used, or turned in. Murray testified that mileage is not checked for employees' commute to work because Appellee trusts the employees who have gas cards.Murray also testified that employees keep the gas cards as long as they are not abused, the cards are not tied to a worker's particular commute, Appellee pays the gas card bills directly, employees can purchase items other than gas but it is discouraged, and that if employees did purchase something other than gas on the cards the employee would get a reprimand or a warning. Murray testified that the gas cards can be used for personal use as long as it is not abused.

Debra McCoy ("McCoy") the chief financial operator for Appellee, testified at the Board's hearing on behalf of Appellee. McCoy testified that she takes care of the business records for Appellee. McCoy also testified that Appellant has worked solely at the Bishop's Landing jobsite since October 22, 2012, except on November 1st and 2nd of 2012. McCoy testified that she pays the bills for Appellee, including paying the gas card bills monthly. McCoy

5

testified that she monitors the bills just to look for "oddball stuff" in order to check for abuse or a lost card.

### III. PARTIES' CONTENTIONS

### A. Appellant's Opening Brief

Appellant argues that the Board committed legal error by not applying the "going and coming" rule to define Appellant's employment relationship when the contract-related evidence was ambiguous as to whether the parties had contemplated worksite travel as work-related activity.[12] Specifically, Appellant argues that the contract-related evidence did not clearly establish the contractual terms of Appellant's employment relationship and as a result, the contract-related evidence was ambiguous.[13] Appellant argues that the Delaware Supreme Court's ruling in *Spellman v. Christiana Care Health Servs.*, stands for the proposition that the Board must conduct the going and coming analysis to further define Appellant's employment relationship when the contractual terms with regard to the scope of employment are ambiguous or when there is no contract.[14]

Appellant argues that under the going and coming analysis the accident in question was within Appellant's scope of employment. Appellant acknowledges that the going and coming rule bars recovery for injuries that result from accidents during an employee's regular travel to and from work, but contends that there are many exceptions to this rule.[15] Specifically, Appellant argues that the compensation exception to the going and coming rule applies because Appellee provided some of its employees with gas cards, which is "strong evidence that the

---

[12] Opening Brief, Item 7, at *8 (July 8, 2015).
[13] Opening Brief, Item 7, at *11-12 (July 8, 2015).
[14] Opening Brief, Item 7, at *10-11 (July 8, 2015).
[15] Opening Brief, Item 7, at *14 (July 8, 2015) (quoting 19 *Del. C.*§ 2301(18)(a)).

6

employment contract contemplated worksite travel as work-related activity."[16] Appellant further argues that the Board's conclusion that employees who had gas cards were not reimbursed for work-related mileage was not supported by substantial evidence. Specifically, Appellant argues that the testimony presented indicated that "employees unanimously understood that gas cards were meant to pay for travel to and from the worksite."[17] Appellant notes that Appellee's "bookkeeper also explained that employees who use gas cards must submit gas pump receipts so that [Appellee] could verify the gas card charges and control abuse."[18]

Appellant further argues that the traveling employee exception to the going and coming rule applies because his job duties were not tied to a fixed worksite and that he worked on various construction projects at different locations in Delaware and Maryland.[19]

### B. Appellee's Answering Brief

Appellee argues that the contract was unambiguous with regard to Appellant's course and scope of performance, and therefore the Board correctly limited its analysis to the terms of the contract.[20] Appellee argues that the Delaware Supreme Court held in *Spellman* that the Board should make a finding based on contract-related evidence if it is able to do so, and if not then the Board may consider secondary presumptions and other rules of construction such as the going and coming rule and its exceptions.[21]Appellee argues that Appellant's interpretation of *Spellman*—that the Board *must* conduct a going and coming analysis if the contract-related evidence is ambiguous—is misplaced, and it is inconsistent with the *Spellman* Court's effort to limit what had become a needlessly complex and disjointed method of analysis of course and

---

[16] Opening Brief, Item 7, at *18 (July 8, 2015).
[17] Opening Brief, Item 7, at *19 (July 8, 2015).
[18] Opening Brief, Item 7, at *19 (July 8, 2015).
[19] Opening Brief, Item 7, at *19-20 (July 8, 2015).
[20] Answering Brief, Item 10, at *10 (Aug. 19, 2015).
[21] Answering Brief, Item 10, at *10-11 (Aug. 19, 2015).

scope issues.[22]   Appellee further argues that substantial evidence supports the Board's determination that the contract-related evidence was sufficient to determine that the accident in question did not occur within Appellant's scope of employment. [23]

Appellee then argues that even if this Court were to find that the Board should have conducted a going and coming analysis,the accident still occurred outside Appellant's scope of employment and no exception to the going and coming rule applies.[24]   Specifically, Appellee argues that the compensation exception only applies if the accident occurred during a trip for a special employer purpose, andfurther, that the compensation exception does not apply because Appellant did not have a gas card and was never compensated for travel time or expense.[25]

Appellee argues that the traveling employee exception to the going and coming analysis also does not apply because Appellant worked at the Bishop's Landing jobsite every workday from October 2012 through the date of the accident except for two days.[26]   Appellee cities the testimony ofMurray, who indicated that the Bishop's Landing project was a long term project and that it was rare to move employees from one jobsite to another.[27]

### C.  Appellant's Reply Brief

Appellant contends that Appellee's interpretation of *Spellman* is misplaced.  Specifically, Appellant argues that the *Spellman* Court "made clear that examination of the employment contract marked the *start* of the inquiry, but not necessarily the end."[28]Appellant further argues that there was not a written employment contract which clearly established the contractual terms of Appellant's employment relationship and, as a result, the Board had to piece together the

---

[22] Answering Brief, Item 10, at *13 (Aug. 19, 2015).
[23] Answering Brief, Item 10, at *14-15 (Aug. 19, 2015).
[24] Answering Brief, Item 10, at *16 (Aug. 19, 2015).
[25] Answering Brief, Item 10, at *19-20 (Aug. 19, 2015).
[26] Answering Brief, Item 10, at *19-23 (Aug. 19, 2015).
[27] Answering Brief, Item 10, at *24 (Aug. 19, 2015).
[28] Reply Brief, Item 17, at *6 (Sept. 17, 2015).

contractual terms from extrinsic contract-related evidence.[29]  Appellant then argues that the inferred contractual terms derived from this extrinsic contract-related evidence did not unambiguously explain how Appellant and Appellee's employment relationship contemplated travel to and from work and therefore the Board should have applied secondary default presumptions, specifically the going and coming analysis.[30]

Appellant further argues that the compensation and traveling employee exceptions to the going and coming rule apply and therefore the Board should have found that the accident occurred within Appellant's scope of employment.[31] Appellant argues that even though he was not issued a gas card, by the employer, that does not disqualify the travel pay exception.[32] Appellant argues that Taylor had a gas card, that Taylor and Appellant were co-workers, that they traveled to the same job, at the same worksite, and in the same car.[33] Appellant argues that it would be inconsistent with "liberal policy" to conclude that Taylor's trip was work-related while Appellant's was not.[34]  Appellant further argues that simply because Appellee did not compensate in the form of mileage does not preclude the compensation exception from applying.  Specifically, Appellant argues that the compensation only needs to serve to "reimburse the employee from his or her additional travel expense or inconvenience," which was the main reason Appellee issued the gas cards.[35]

Appellant further argues that the traveling employee exception applies in this case. Specifically, Appellant argues that this case is similar to *Devine v. Advanced Power Control,*

---

[29] Reply Brief, Item 17, at *10 (Sept. 17, 2015).
[30] Reply Brief, Item 17, at *10 (Sept. 17, 2015).
[31] Reply Brief, Item 17, at *13 (Sept. 17, 2015).
[32] Reply Brief, Item 17, at *13 (Sept. 17, 2015).
[33] Reply Brief, Item 17, at *13-14 (Sept. 17, 2015).
[34] Reply Brief, Item 17, at *14 (Sept. 17, 2015).  The "liberal policy" to which Appellant refers "narrowly interpret[s] the coming and going rule and broadly interpret[s] the exceptions so that coverage is not denied wherever the injury can fairly be characterized as arising out of the employment."  *Collier v. State*, 1994 WL 381000, at *2 (Del. Super. July 11, 1994).
[35] Reply Brief, Item 17, at *14-18 (Sept. 17, 2015) (citing *Histed*, 621 A.2d at 342, 345-46).

*Inc.*, in which the claimant received compensation from an injury resulting from a car accident that occurred during claimant's homebound commute, where claimant was driving his personal vehicle, was not compensated for his travel time, and was not entitled to mileage reimbursement.[36]

## IV. THE BOARD'S DECISION

The Board began its analysis of discussing *Spellman*. In particular the Board noted that "[i]f the evidence of the contractual terms resolves the issue of whether the injury arose out of and occurred in the course of the Claimant's employment, then the Board's analysis can end."[37] The Board then made several findings: (1) that Appellant was not "on the clock" at the time of the accident; (2) Appellant's work hours started when he arrived at the jobsite; (3) Appellant was not paid until he arrived at the jobsite and checked in with Hitchens; (4) Appellant was not paid for his traveling to or from work; (5) Appellant's employment contract did not reimburse Appellant or Taylor for work-related mileage; (6) the gas cards were given to trusted, long-term employees in lieu of a raise; (7) gas cards could be used for some personal use and even on family vacations as long as it was not abused; (8) there was no requirement that employees with gas cards turn in mileage logs or proof that the cards were being used solely for work-related tasks; and (9) a gas card was given to Taylor in lieu of a raise and not as a condition of employment or because he was driving between jobsites or running special errands for Appellee.[38]

Based on these finds and in light of the Delaware Supreme Court's decision in *Spellman*, the Board held that Appellant's employment contract resolved the course and scope issue.[39] The

---

[36] Reply Brief, Item 17, at *18-19 (Sept. 17, 2015).
[37] *Cantwell*, IAB Hearing No. 1419026, at 9.
[38] *Id.* at 9-10.
[39] *Id.* at 10.

10

Board then explained that it did not need to resort to a discussion of the going and coming rule and its exceptions.[40] The Board then found that Appellant was not acting within the course and scope of his employment when he was injured on March 5, 2014.[41]

## V. STANDARD OF REVIEW

The Court has a limited role when reviewing a decision by the Board. If the decision is supported by substantial evidence and free from legal error,[42] the decision will be affirmed.[43] Substantial evidence is evidence that a reasonable person might find adequate to support a conclusion.[44] The Board determines credibility, weighs evidence, and makes factual findings.[45] This Court does not sit as the trier of fact, nor should the Court substitute its judgment for that rendered by the Board.[46] The Court must affirm the decision of the Board even if the Court might have, in the first instance, reached the opposite conclusion.[47] When reviewing an appeal from the Board, this Court must consider the record in a light most favorable to the party prevailing below.[48]When factual determinations are at issue, the Court must take due account of the experience and specialized competence of the Board and the purpose of the Worker's Compensation Act.[49] Questions of law are reviewed *de novo*.[50]

[40]*Id.*
[41]*Id.*
[42]*General Motors Corp. v. Freeman*, 164 A.2d 686, 688 (Del. 1960).
[43]*Sirkin and Levine v. Timmons*, 652 A.2d 1079 (Del. Super. 1994).
[44]*Oceanport Indus. Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994).
[45]*Johnson v. Chrysler Corp.*, 213 A.2d 64, 66-67 (Del. 1965).
[46]*Id.* at 66.
[47]*Brogan v. Value City Furniture*, 2002 WL 499721, at *2 (Del. Super. March 27, 2002).
[48]*General Motors Corp. v. Guy*, 1991 WL 190491 (Del. Super. Aug. 16, 1991) (internal citations omitted).
[49]*Mangle v. Grotto Pizza, Inc.*, 1997 WL 358671, at *4 (Del. Super. May 13, 1997).
[50]*Christiana Care Health Serv. v. Palomino*, 74 A.3d 627, 629 (Del. 2013).

## VI. ANALYSIS

### A. There is Substantial Evidence To Support The Board's Finding Regarding Appellant's Scope Of Employment

The determination of whether an injury arises out of and in the course of employment is highly factual, and is resolved under a totality of the circumstances analysis.[51] The general rule establishes two distinct elements for compensability: (1) "arising out of the employment," which refers to the origin and cause of the injury; and (2) "in the course of employment," which refers to the time, place, and circumstances of the employee's injury.[52] The fundamental inquiry for the scope of employment issue is "whether, under the totality of the circumstances, the employment contract between the employer and employee contemplated that the employee's activity at the time of injury should be regarded as work-related and therefore compensable."[53]

Delaware Courts have derived the doctrine known as the going and coming rule from statutory language found in 19 *Del. C.*§2301 (19)(a), which states in pertinent part:

> "Personal injury sustained by accident arising out of and in the course of the employment":
>
> a. Shall not cover an employee except while the employee is engaged in, on or about the premises where the employee's service are being performed, which are occupied by, or under the control of, the employer (the employee's presence being required by the nature of the employee's employment), or while the employee is engaged elsewhere in or about the employer's business where the employee's services require the employee's presence as a part of such service at the time of the injury . . . [54]

---

[51]*Histed*, 621 A.2d at 345.
[52]*Spellman*, 74 A.3d at 623.
[53]*Id.* at 625.
[54] 19 *Del. C.*§ 2301(19)(a)

The rationale behind this rule is that "during [employees] daily commute to and from work employees face the same risks as the general public—risks no different from those that workers confront on personal excursions."[55]

In *Spellman*, the Delaware Supreme Court specifically addressed when the Board should apply the going and coming analysis in determining if an injury occurred within an employee's scope of employment.[56] The Delaware Supreme Court specifically expressed concern that the profusion of exceptions to the going and coming rule may cause adjudicators to "lose sight of the true purpose and function of those doctrines in what should normally be a simplified straightforward analysis."[57] In an attempt to restore focus to the true purpose and function of the scope of employment determination, the Supreme Court noted that "the analysis of the 'scope' issue should start by focusing upon the employment agreement itself. If the evidence of the contractual terms resolves the issue of whether the injury arose out of and occurred in the course of the claimant's employment, then the analysis *can end*."[58] The Court then noted that "[i]f, however, the contract-related evidence is insufficient to resolve the 'scope of employment' issue, then the Board (and any reviewing court) *may* resort to secondary default presumptions and rules of construction that best further the statutory purpose."[59]

In the case *sub judice*, the Board found that the contract-related evidence supported a determination that the accident in question was not within Appellant's scope of employment.[60] This Court finds that the Board's determination was, indeed, supported by substantial evidence. Specifically, there was unrebutted testimony that Appellant was paid an hourly rate, beginning

---

[55]*Id.*
[56]*See Spellman*, 74 A.3d 619.
[57]*Id.* at 625.
[58]*Id.* (emphasis added)
[59]*Id.*
[60]*Cantwell*, IAB Hearing No. 1419026, at 10.

when he arrived at the jobsite at 7:00 a.m. The record reflects that the accident occurred approximately forty minutes prior to the start of Appellant's shift. Appellee did not provide for any compensation for travel expenses or for paid time while traveling to and from work to Appellant.

An analysis of whether the accident occurred while Taylor was within the scope of his employment is separate and irrelevant to this Court's determination of whether the accident occurred within the scope of Appellant's employment. It may well be that by issuing Taylor a gas card, Appellee has altered Taylor's employment contract to include travel to and from work to be within his scope of employment. However, the record reflects that Appellant was never offered, nor received, a gas card. The Court finds that the Board relied on substantial evidence in determining that the accident did not occur within Appellant's scope of employment and therefore, the Board did not error in not conducting a going and coming analysis.

### B. No Exception To The Going And Coming Rule Is Applicable

Having determined that the Board did not error in failing to apply the going and coming rule to the facts in this case and that the Board's findings were supported by substantial evidence, this Court need not conduct its own going and coming analysis.[61] However, this Court will addressthe two exceptions the parties argue are relevant in this matter.

In applying a going and coming analysis, "Delaware courts typically analyze first whether an exception to the 'going and coming' rule applies. If not, then the courts will apply the 'going and coming' rule to bar compensation."[62] This Court has previously recognized that a court "should narrowly interpret the coming and going rule and broadly interpret the exceptions

---

[61]*See Spellman*, 74 A.3d 619.
[62]*Id.*

14

so that coverage is not denied wherever the injuries can fairly be characterized as arising out of the employment."[63]

### i. The Compensation Exception

In *Histed*, the Delaware Supreme Court recognized the compensation exception to the going and coming rule, specifically, that "[w]hen an employee is paid an identifiable amount as compensation for time spent in traveling to and from work, the trip is within the course of employment."[64] This Court has stated that "the inquiry is not whether the injury can be found to have occurred while [claimant] was going to work, but, rather, whether there is a sufficient nexus between [claimant's] employment and [claimant's] injury that it may be said that [claimant's] injury was a circumstance of [claimant's] employment."[65] More specifically, this Court noted that such a nexus exists "when the employer requires an employee to perform a 'special errand,' or when the employer agrees to compensate the employee for travel and the reimbursement is reasonably related to the cost of travel."[66]

Taylor's unrebutted testimony was that he and Appellant were not performing a "special errand" for Appellee at the time of the accident.[67] Appellant also testified that he did not receive compensation from Appellee for his trip into work, that he did not have a gas card, and he was never paid for mileage to go to or from work.[68]

However, Appellant argues that the fact that he was not compensated for work travel is not dispositive of whether the compensation exception applies because Taylor was provided a gas card and was compensated for his travel expenses and conferred this benefit onto

---

[63]*Collier*, 1994 WL 381000, at *2.
[64]*Histed*, 621 A.2d at 345.
[65]*Collier*, 1994 WL 381000, at *2.
[66]*Id.*
[67] Tr. 26.
[68] Tr. 16-17.

Appellant.[69] This Court is unaware of, and Appellant has failed to provide, any authority which suggests that whenan employer compensates an employee for travel expenses and that employee provides travel to a co-worker, that the employer has provided that co-worker compensation for his travel expenses or has in any other way altered the employment terms with the co-worker. Essentially, Appellant is anincidental beneficiary of Taylor's employment contract with no legally enforceable rights.[70]The employment terms between Appellee and Appellant did not provide compensation for travel expenses and the agreement was not modified by Taylor providing rides to Appellant, therefore the compensation exception to the going and coming rule is not applicable.

Further, there is ample evidence to support the Board's finding that the gas cards are not reasonably related to the cost of travel. Taylor testified that he turns in his gas receipts, but no mileage is documented.[71]Taylor further testified that there is no restriction that the gas card only be used for transportation to and from the jobsite.[72] Murray testified that Appellee monitors the amounts charged on the gas cards to make sure the charges are not excessive, but there is no specific amount of mileage expected, used, or turned in.[73]Murray further testified that the gas cards are not tied to a worker's particular commute and that employees can use the gas cards

---

[69] Reply Brief, Item 17, at *13-14 (Sept. 17, 2015).

[70]*See NAMA Holdings, LLC v. Related World Market Center, LLC*, 992 A.2d 417, 434 (Del. Ch. 2007) ("As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions. Mere incidental beneficiaries have no legally enforceable rights under a contract. A third-party beneficiary is an incidental beneficiary unless the parties to the contract intended to confer a benefit upon it.") (citing *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *2 (Del. Ch. Feb. 17, 2004); *Madison Realty Partners 7, LLC v. AG ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001)).

[71] Tr. 26.

[72] Tr. 26.

[73] Tr. 40-43.

when they are on vacation or to fill up a girlfriend's car.[74]McCoy also testified that the gas cards are monitored for "oddball stuff" in order to check for abuse or a lost card.[75]

## ii. The Traveling Employees Exception

The traveling employee exception to the going and coming ruleprovides that "if an employee as part of his job is required to bring with him his own motor vehicle for use during his working day, the trip to and from work by that fact alone falls within the course of employment."[76]Specifically, traveling employees "are those workers who have semi-fixed places of business and whose employment involves substantial travel."[77]The theory behind this exception is that:

> [T]he obligations of the job reach out beyond the premises, make the vehicle a mandatory part of the employment environment, and compel the employee to submit to the hazards associated with private motor travel, which otherwise he would have the option of avoiding. But in addition there is at work the factor of making the journey part of the job, since it is a service to the employer to convey to the premises a major piece of equipment devoted to the employer's purposes.[78]

In *Devine*, the claimant was an electrician who used his own motor vehicle to travel from one worksite to another in a single day.[79] Claimant was not required to check in at the office or warehouse in Newark and carried materials in his car to fulfill his duties as an employee.[80] The Court in *Devine* found that the claimant had a semi-fixed place of employment because his travel was "furthering his employer's business interests."[81]Similarly, in *Bedwell*, the claimant was a carpet cleaner who would work at various customer sites each day.[82]Claimant would report to

---

[74] Tr. 40-43, 47.
[75] Tr. 54.
[76]*Devine*, 663 A.2d at 1211.
[77]*Bedwell v. Brandywine Carpet Cleaners*, 684 A.2d 302, 305 (Del. Super. 1996).
[78]*Devine*, 663 A.2d at 1211.
[79]*Id.* at 1213.
[80]*Id.*
[81]*Id.*
[82]*Bedwell*, 684 A.2d at 303.

the employer's headquarters where the employer would delegate assignments.[83] The crew chief would then drive the employees to the day's job assignments in the company vehicle and return to the headquarters at the end of the day.[84] The Court found that the claimant had a semi-fixed place of employment and that his employment required a substantial amount of daily travel.[85]

In the case at bar, there is substantial record evidence to indicate that Appellant did not have a semi-fixed place of employment. Specifically, McCoy testified that Appellant worked at the Bishop's Landing jobsite every workday from October 2012 through the date of the accident, with the exception of two days— November 1st and 2nd of 2012.[86] Murray testified that it was "very rare" for an employee to work at a different worksite than the one they had been assigned.[87] Murray further testified that employees would be temporarily assigned to a different jobsite if the weather was bad at the site they were assigned to and the employee needed hours for that week.[88]

This case differs from both *Devine* and *Bedwell*. In both those cases, the employees traveled to different jobsites within a day, whereas Appellant would travel to a jobsite and stay there until the end of the day. The record also reflects that Appellant was working at the Bishop's Landing jobsite every workday for a period of sixteen months leading up to the accident.[89] The Court therefore finds that Appellant had a fixed place of employment and as a result the traveling employee exception to the going and coming rule is inapplicable.

---

[83] *Id.*
[84] *Id.*
[85] *Id.* at 306.
[86] Tr. 53-54.
[87] Tr. 39.
[88] Tr. 39.
[89] Tr. 53-54.

18

Because this Court has determined that no exception to the going and coming rule applies this Court must apply the rule and bar compensation.[90]  As a result, assuming *arguendo* that the Board erred in not conducting a going and coming analysis, such error is harmless as the going and coming rule bars Appellant from compensation because no exceptions apply.

## VII. CONCLUSION

The Court concludes that there is substantial evidence to support the Board's determination that the accident in question was not within Appellant's scope of employment and therefore the Board did not err in not conducting a going and coming analysis. The Court further concludes that even assuming,*arguendo*, that the Board erred in not conducting a going and coming analysis, this error was harmless because no exception applies and therefore Appellant is barred from recovering compensation for the accident.  Accordingly, the Board's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

_____/s/_____
**M. Jane Brady**
Superior Court Judge

---

[90] *Spellman*, 74 A.3d 619.