# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Donovan Smith HOA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. S17A-06-001 MJB |
| | ) | |
| Donovan Smith MHP, LLC, | ) | |
| | ) | |
| Appellee. | ) | |

**Submitted:** September 1, 2017
**Decided:** December 19, 2017

*Upon Appellants' Appeal from the Decision of the Arbitrator,* **AFFIRMED.**

## OPINION

Brian S. Eng, Esq., Community Legal Aid Society, Inc., 840 Walker Road, Dover, Delaware 19904, *Attorney for Appellant.*

Seth L. Thompson, Esq., Sergovic Carmean Weidman McCartney & Owens, P.A., 406 S. Bedford Street, Suite 1; P.O. Box 751, Georgetown, Delaware 19947, *Attorney for Appellee.*

**BRADY, J.**

# I.  INTRODUCTION

Before the Court is an appeal by the residents of the Donovan Smith Manufactured Home Park ("Homeowners") from a decision by an Arbitrator to allow Donovan Smith MHP, LLC ("Donovan Smith") to impose a rent increase greater than the CPI-U.[1]  The Arbitrator found that Donovan Smith had met the statutory requirements to increase the rent in the amount requested.[2]

Following appeal and briefing, the matter was referred for consideration on September 1, 2017.  This is the Court's decision.

# II.  STANDARD OF REVIEW

While there has been some question about the proper standard of review of the arbitration process provided by this statute,[3] the parties appear to agree that the standard used in an administrative appeal as applicable.  That is, the standard is whether the decision of the Arbitrator is supported by substantial evidence[4] and free from legal error.[5]  The Court has a limited role when reviewing a decision by an administrative agency.  If the decision is supported by substantial evidence and free from legal error, the decision will be affirmed.[6]  Substantial evidence is evidence that a reasonable person might find adequate to support a conclusion.[7]  Freedom from legal error exists when the agency "applied the relevant legal principles."[8]  The

---

[1] This is defined in the statute as the "average annual increase in the Consumer Price Index for All Urban Consumers in the Philadelphia-Wilmington-Atlantic City area… for the most recently available 36-month period." *25 Del. C.* §7043.

[2] The rent prior to the requested increase was $447.60.  The request was to raise the rent to $477.50, an increase of $29.90.  The figures in the Arbitrator's Report were incorrect.

[3] See *December Corp. v. Wild Meadows Home Owners Ass'n*, 2016 WL 3866272 (Del. Super. July 12, 2016).

[4] *General Motors Corp. v. Freeman*, 164 A.2d 686, 689 (Del. 1960).

[5] *Boone v. Syab Serv./Capitol Nursing*, 2012 WL 3861059, *1 (Del. Super. Ct. Aug. 23, 2012).

[6] See *General Motors Corp*, 164 A.2d, at 688; *Sirkin and Levine v. Timmons*, 652 A.2d 1079 (Del. Super. Ct. 1994).

[7] *Oceanport Indus. Inc. v. Wilmington Stevedores*, Inc., 636 A.2d 892, 899 (Del. 1994).

[8] *State v. Kasi*, 1994 WL 637028, at *4 (Del. Super. Ct. Mar. 11, 1994).

2

agency determines credibility, weighs evidence and makes factual findings.[9]  This Court does not sit as the trier of fact, nor should the Court substitute its judgment for that rendered by the agency.[10]  The Court must affirm the decision of the agency, if properly supported, even if the Court might have, in the first instance, reached an opposite conclusion.[11]  Only when there is no satisfactory proof in support of a factual finding of the agency may this Court overturn it.[12]

## III.    THE ARBITRATION HEARING[13]

The arbitration was conducted in a less formal fashion than a trial proceeding, but was structured to allow each party to present witnesses and evidence, conduct cross-examination and present final argument.  Neither side was represented by an attorney at the hearing.

The Arbitrator invited the Homeowners to proceed first as they were challenging the rent increase.[14]  Ms. Terry Saunders,[15] representing the interests of the Homeowners, testified briefly regarding health and safety concerns at the park, a lack of amenities and landscaping, and of generally poor conditions.[16]  She acknowledged, however, that Donovan Smith had not been cited by any governmental or regulatory agency for health or safety violations.[17]  She then called James McCarty as a witness.  Mr. McCarty, a resident, spoke regarding the communities that Donovan Smith had claimed were comparable in a letter to the Homeowners.[18]  Mr. McCarty

---

[9] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66-67 (Del. 1965).

[10] *Id.* at 66. (also see *City of Newark v. Unemployment Ins. Appeal Bd.,* 802 A.2d 318, 323 at *2 (Del. Super. Ct. 2002)).

[11] *Straley v. Advanced Staffing,* 2009 WL 1228572, *2 (Del. Super. Ct. Apr. 30, 2009) (citing *PAL of Wilmington v. Graham,* 2008 WL 258986, at *3 (Del. Super. Ct. Jun. 18, 2008).

[12] *Johnson.,* 213 A.2d, at 67.

[13] The parties agree all procedural provisions under the statute required to precede a hearing were completed.

[14] Tr. of Arbitration Hearing, at 8 (Apr. 20, 2017) (hereinafter, "Arbitration Tr.").

[15] At some points in the proceedings she is referred to as Dr. Saunders, but it is unclear if she is a physician or PhD. Active or retired.

[16] Arbitration Tr., at 13-14.

[17] *Id.* at 20-21.

[18] The two communities referenced in the letter were McNichol Place and Whispering Pines.  While there was also testimony regarding the Love Creek Community, Ms. Saunders objected to consideration of that information

3

also testified that the other communities included water, sewer and trash in the rents charged.[19] While Mr. McCarty thought Donovan Smith's property was less attractive, and not as well manicured,[20] he testified that McNichol Place was a community "along the same lines of Donovan Smith."[21] When asked to compare that community to Donovan Smith, he testified that McNichol Place was "Similar. I can't say better."[22]

Mr. Kenneth Burnham represented the interests of Donovan Smith. He called Ms. Jacqueline McIlvain, office manager for Donovan Smith, who testified that Donovan Smith currently charged $447.60 per month, which included water, sewer and trash expenses. She also testified that the McNichol Place, Whispering Pines and Love Creek Communities were comparable to Donovan Smith.[23] She had researched rents at those parks and found they exceeded Donovan Smith by a substantial amount.[24] She further testified that the most similar community was McNichol Place because, like Donovan Smith, it was older and did not offer a pool, community center or recreation area.[25] Ms. McIlvain also testified that in the previous year Donovan Smith had installed paved driveways in each unit in the park and painted the maintenance building.[26]

Following testimony, each party presented argument. Mr. Burnham argued the improvements established that the rent increase was directly related to increased expenses for the

---

because Donovan Smith had not notified the Homeowners that it would be considered. The Arbitrator, however, ruled the information would be considered because the Love Creek community had been discussed in the meeting with the Homeowners, which took place before the arbitration. See Arbitration Tr., at 35.

[19] *Id.* at 24.
[20] *Id.*
[21] *Id.*
[22] *Id.* at 30.
[23] *Id.* at 36.
[24] Specifically, the rents were reported to be as follows: McNichol Place, $570/mo., not including water, sewer and trash; Whispering Pines, $535/mo., not including water, sewer and trash; Love Creek $530/mo., including water, sewer and trash.
[25] Arbitration Tr., at 46.
[26] *Id.* at 46-48.

4

improvement and maintenance of the community. Further, he contended that Donovan Smith had established that a market rent increase was justified based on the testimony regarding the comparable communities and the rents charged in those communities.

Ms. Saunders argued the comparison between communities showed that Donovan Smith was not as well-maintained or in as good condition as the others being used for comparison. She further argued that Donovan Smith had not shown that expenses had increased or that Donovan Smith was having trouble "balancing the books."[27] Further, that the whole purpose of the law was to balance the interests of the Homeowners and Donovan Smith and to prevent undue hardship on residents.

As noted above, the Arbitrator found that the statutory requirements were met and the rent increase was justified. The Arbitrator also commented in the decision that, in his opinion, this community, which was only populated year round by approximately 50% of the homeowners, was not the kind of community the law was intended to benefit.[28]

## IV.    APPLICABLE LAW

The Rent Justification Act requires several factors be shown before Donovan Smith may increase rent above CPI-U.[29]

First, the community owner must not have been found, in the most recent 12 months, to be in violation of any provision that "threatens the health and safety of the residents" for more than 15 days after notification of the violation.[30]

---

[27] *Id.* at 61.
[28] His reasoning appears to be that, if the intent of the law is to provide restrictions on rent increases so persons of limited or fixed means do not lose their home, those persons who can afford two homes don't need the protection.
[29] See 25 *Del. C.* §§7040-7046.
[30] 25 *Del. C.* §7042 (a)(1).

5

Second, the proposed rent increase must be "directly related to operating, maintaining, or improving the manufactured home community."[31]

Third, if the previous two requirements are met, the rent increase must be justified by one or more of eight specific, listed factors. To specifically justify a rent increase based on market rent, those factors include capital improvements, changes in taxes, insurance, utility expenses, extraordinary repairs or adjustment for market rent increases.[32]

In order to properly determine whether an increase is justified to meet market rent increases, "relevant consideration include rents charged to recent new homeowner entering the subject manufactured home community and/or by comparable manufactured home communities. To be comparable, a manufactured home community must be within the competitive area and must offer similar facilities, services, amenities and management."[33]

## V.    PARTIES' CONTENTIONS

On appeal the Homeowners argue that Donovan Smith was required, and failed, to prove the rent increase was directly related to operating, maintaining or improving the community and that the amount requested was the appropriate market rent for Donovan Smith.

The Homeowners further argue that the Arbitrator erred by shifting the burden of proof to the Homeowners, by considering factors outside those provided by statute, and in his interpretation of the statute.

---

[31] 25 *Del. C.* §7042 (a)(2)
[32] 25 *Del. C.* §7042(c)(7).
[33] *Id.*

Finally, the Homeowners argue that Donovan Smith failed to show their "profits were down because their costs were up," and that, therefore, the Arbitrator's decision to grant the rent increase was erroneous.

Donovan Smith argues the Arbitrator did not shift the burden of proof, that his ruling was not erroneous, and that his interpretation of the language was consistent with the purpose of statute and case law.

## VI.    ANALYSIS

The Court finds that the Arbitrator's decision was supported by substantial evidence and free of legal error. Further, that the Arbitrator did not shift the burden of proof, and did not consider matters outside the stature, and even if he did, that it did not affect the integrity of the ruling.

The evidence before the Arbitrator included testimony regarding the completion of some regular maintenance, the painting of a maintenance building, and capital improvements to Donovan Smith, the paving of a driveway for each unit in the community. The Homeowners argue, in essence, that Donovan Smith should have been required to open its books to inspection, in order to establish the owner's bottom line was affected by the work they did. The Court does not find that was the intent or purpose of the statute. The statute imposes some significant requirements on an owner to justify a rent increase – they cannot do so if they are allowing conditions to affect the health and safety of the residents; they are not allowed to do so unless they incur expenditures beyond routine maintenance or to improve the community; and they are not allowed to increase the rent beyond the market tolerances in the same competitive environment. Nothing in the statute, however, requires that the private owner expose its

7

financial information to public scrutiny. While the intent of the statute is to maintain the same relative return on the property that the owner was satisfied to receive before the statute took effect,[34] there is no requirement that it be a penny for penny or dollar for dollar analysis, at least in these circumstances, when the owner is seeking to justify the increase based on market rent. The Court leaves open the question whether such an analysis would be appropriate if the justification was to recoup increased expenses for taxes, insurance, capital improvements or some extraordinary rehabilitation work.

Donovan Smith also established there was a discrepancy in the market rents charged in comparable communities. The communities, particularly McNichol Place, were agreed by all to be comparable, and even excluding the evidence regarding the Love Creek community (to which the Homeowners objected), the evidence showed a significant difference between what Donovan Smith charged in rent and what the other communities charged. There was substantial evidence to support the Arbitrator's findings.

The Court further finds that the Arbitrator did not alter the appropriate burden of proof. While the Arbitrator did invite the Homeowners to proceed with their presentation first, the findings he entered applied the burden to Donovan Smith to establish the justification for the rent increase. No burden to establish the request was not justified was imposed on the Homeowners, nor did the Arbitrator find they did not meet such a burden. The Homeowners have not shown they suffered any prejudice or were precluded from presenting any evidence because of the order of presentation of testimony or argument.

Finally, the Arbitrator did not err in his interpretation of the statute. The requirements of the statute were met. While the Arbitrator did question the applicability of the statute to a

---

[34] *Bon Ayre Land, LLC, v. Bon Ayre Community Association,* 149 A.3d 227 (Del. 2016).

community in which many of the homes were not primary residences, the evidence presented clearly established that the requirements of the statute were met and the rent increase was justified. The Court finds no error in the fact that the Arbitrator made the comment in question.

## VII.    CONCLUSION

For the foregoing reasons, the Court finds the decision of the Arbitrator is **AFFIRMED.**

**IT IS SO ORDERED.**

**M. Jane Brady**
Superior Court Judge